IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MCGRATH, | ) | CASE NO. 1:11CV2023 |
| | ) | |
| Petitioner, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| KIMBERLY CLIPPER, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | Doc. Nos. 1, 50 |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Joseph McGrath ("McGrath") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254 on September 26, 2011.  McGrath is in the

custody of the Ohio Department of Rehabilitation and Correction pursuant to journal

entry of sentence in the case of *State of Ohio vs. McGrath*, Case Nos. CR 516312 and

CR 524159 (Cuyahoga County 2009).

Also before the court is McGrath's motion for summary judgment.  Doc. No. 50.

Respondent opposes McGrath's motion.  Doc. No. 51.  For the reasons set forth below,

McGrath's motion for summary judgment should be denied and his petition dismissed

with prejudice.

I.

The state appellate court reviewing McGrath's conviction during his direct appeal

found the following facts to be relevant to his case:

{¶ 1} Defendant-appellant, Joseph McGrath ("defendant"), appeals *pro se* following his convictions for three counts of menacing by stalking, two counts of violating a protection order, and resisting arrest.  The convictions arise from separate criminal cases that were consolidated for trial.  For the reasons that follow, we affirm.

{¶ 2} In Case No. CR-516312, defendant was charged with three counts of menacing by stalking in violation of R.C. 2903.211(A)(1)FN1 and three counts of violation of a temporary protection order in violation of R.C. 2919.27(A)(2).FN2 In Case No. CR-524159, defendant was charged with two additional counts, menacing by stalking and resisting arrest.FN3  The victim involved in each count was defendant's ex-girlfriend ("Michelle").

FN1. Counts 1-3. The indictment identified the following dates of offense:  Count 1 occurred between March 12, 2007-December 28, 2007; Count 2 occurred between December 31, 2007-January 18, 2008; and Count 3 occurred between January 19, 2008-September 10, 2008.  Each count contained a furthermore clause alleging a prior conviction for menacing by stalking and a history of violence toward the victim.

FN2. These were Counts 4-6, and also were alleged to have occurred between March 12, 2007-December 28, 2007 (Count 4); between December 31, 2007-January 18, 2008 (Count 5); and between January 19, 2008-September 10, 2008 (Count 6).

FN3. Both of these offenses were alleged to have occurred on September 26, 2008.

{¶ 3} The matter proceeded to trial.  Michelle testified that she met defendant in 2005 and they began dating in April of that year.  Although defendant would spend periods of time at her home in Cleveland, he would leave for several days. Michelle insisted that defendant did not reside with her as he maintained a separate residence elsewhere.  During this time period, Michelle lived with her daughter, Jennifer, as well as Jennifer's fiancé Jim, and their child.  Michelle indicated that after defendant was arrested in January 2008, she returned his belongings to his brother, including his birth certificate and social security card.

{¶ 4} Michelle said she broke off her relationship with defendant sometime in 2006.  He began calling her frequently and she did not answer her phone. Michelle worked at a grocery store in Parma.  It was her testimony that she saw defendant in the parking lot of her job slashing her car tires.  This caused her to make a police report.FN4  She also made a separate police report against defendant for harassment.  On January 15, 2007, Michelle reported being trapped by defendant at a gas station, where police responded and arrested him. Defendant was charged with felony menacing by stalking.

2

FN4. The tire slashing occurred December 19, 2006 according to Det. Klein's testimony.  Those misdemeanor charges were dismissed at Det. Klein's direction.

{¶ 5} On January 18, 2007, the Parma Municipal Court held a hearing and a witness, Det. Michael Klein, testified that defendant was in attendance by video camera.  On that date, defendant was arraigned and Det. Klein requested a temporary protection order,FN5 which the court issued that day ("TPO").  (Joint ex. 9 .)  It was not an ex parte order as reflected on the face of the document.FN6  Det. Klein testified that there was a hearing on the TPO, "they have the arraignment and TPO hearing."  On the TPO form, the line provided to set a date for hearing was not filled in and was not signed by defendant. However, Det. Klein was present at the hearing, which he said took place the same day the TPO was issued.  Det. Klein presented evidence at the hearing in support of the request for the TPO.

FN5. Det. Klein testified that he requested the TPO, not Michelle.  Michelle was in fear of defendant and seeing "how scared she was," Det. Klein "took it upon [himself] to apply for the TPO."

FN6. See joint ex. J and tr. at page 631, "the ex parte TPO granted, and it's all blank, correct?/A. Yes, it is./Q. It's the one afterwards, that TPO granted, and there's a stamp there?/A. Correct. Correct."

{¶ 6} The Deputy Clerk of Parma Municipal Court testified that she took a copy of the TPO to the court's bailiff for delivery to defendant.  A corrections officer for the Parma Police Department testified that he served defendant with a copy of the TPO at "10:05 hours" on January 19, 2007.

{¶ 7} State's ex. 10 is a docket from Parma Municipal Court concerning the charge against defendant for the January 15, 2007 incident.  It reflects the issuance of the TPO and indicates that the matter was bound over to the common pleas court following a preliminary hearing on January 24, 2007. Defendant was indicted in CR-439644 and on March 21, 2007, the Cuyahoga County Common Pleas Court continued the TPO.  That case was dismissed without prejudice on October 14, 2009.

{¶ 8} Sergeant Timothy Smith of the Cuyahoga County Sheriff's Department testified that jail records reflect numerous telephone calls from the jail to Michelle's cellular and home phones for the time periods between March 12, 2007-December 28, 2007, and January 18, 2007-February 1, 2008.  In total, 9,578 calls were placed to those numbers from the jail during those time periods. Sgt. Smith initially testified that none of the calls were accepted, but subsequently acknowledged that about 50 calls were taken around the time period of May 18, 2007.

{¶ 9} Michelle testified that defendant would call incessantly each night.  She said she did not answer most of the calls; however, she did speak with defendant around the May 18, 2007 time period.  Michelle's daughter, Jennifer, confirmed that the phone would ring constantly in the evenings.  Jennifer admitted to answering the phone to try to get defendant to stop calling.

{¶ 10} Michelle said she had loved the defendant but then only helped him because she felt sorry for him.  According to Michelle, around May 2007, she paid $800 to an attorney for defendant.  She also made at least one deposit into defendant's commissary account of $100.  Michelle could not recall if she had made another deposit, but denied making any more than two deposits for defendant.

{¶ 11} On September 26, 2008, Michelle received a message from defendant informing her that he was being released from jail and was on his way to her home.  She locked the doors, closed the windows, and told her daughter and Jim about defendant's impending arrival.  When defendant arrived at the back door, he was told to leave and advised that the police had been called.  Jim confronted defendant in the front of the home.  Defendant left and Jennifer followed him in her car to ensure police could locate defendant.  Jennifer said she did this because she did not want defendant around her mother.

{¶ 12} Jennifer informed police by phone of defendant's presence at a junkyard.  Cleveland Police Officer Daugenti responded to the location, where a foot chase began.  Officer Daugenti announced his status as a police officer and commanded defendant to stop, but defendant did not comply.  Officer Daugenti drew his Taser weapon, being in fear for his own safety.  Defendant continued to refuse Officer Daugenti's orders and then began reaching behind his back.  At that point, Officer Daugenti "tased" defendant.  This did not subdue defendant, who was "tased" again after which a struggle ensued until Officer Daugenti was able to finally place defendant in handcuffs.

{¶ 13} The police contacted EMS and defendant was taken to the hospital.  Officer Daugenti's partner recalled defendant complaining that one of Michelle's neighbors hit him with a baseball bat.  Jennifer denied that there was any intervention or assault on defendant by any neighbors.

{¶ 14} While CR-439644 was pending, Det. Klein was contacted about defendant's violations of the TPO, including the numerous phone calls to Michelle.  He was also advised that defendant went to Michelle's house on December 31, 2007, upon his release from jail.  Det. Klein was preparing charges in connection with the alleged violations when he received notice of the September 26, 2008 incident.  Det. Klein acknowledged that Michelle, against his advice, initiated some contact with defendant.  He confirmed that it is permissible for the victim of the TPO to initiate contact with the defendant but not vice versa.

4

Det. Klein said defendant violated the TPO by making phone and letter contact with Michelle.

{¶ 15} At the conclusion of the State's case-in-chief, the defense moved for acquittal, which the trial court denied.

{¶ 16} The defense presented three witnesses:  William Godale, Neal Watters, and defendant.  Godale testified that he has known defendant since approximately 2004.  Godale said that he sold defendant a Cadillac that was later allegedly damaged by Michelle's daughter's fiancé; however, Godale did not witness the incident.  Godale took photographs of the damaged vehicle and said that Michelle paid for repairs to the car.  Godale also testified about his observations and interactions with defendant and Michelle.  According to Godale, he had "never seen [defendant be] anything but polite and attentive to Michelle * * * go out of his way to try to appease Michelle. * * * [defendant] has been nothing but a gentlemen when he has been out with friends * * * He never used swear words * * * he comes off as a nice person and he was nice to be around."

{¶ 17} During cross-examination of Godale, the State played a DVD audio (State's ex. 15), which consisted of several voicemail messages defendant had left for Michelle.  In them, defendant accuses Michelle of damaging his car and owing him money. However, they also contain several threats of violence and are laced with profanity.  On one occasion, defendant informs Michelle that he was walking down her street with an eight-pound sledgehammer to smash her car into "a million * * * pieces."  Godale recognized defendant's voice on the recordings, but denied ever hearing anything that was played on the message system.  On re-direct, Godale denied ever hearing defendant talk to Michelle like he did on the voicemail messages.

{¶ 18} Neal Watters was a part-time parochial vicar at the Cuyahoga County jail. According to Watters, defendant attended his religious services at the jail and he spoke with defendant on occasion.  Watters confirmed that defendant would speak to him about Michelle.

{¶ 19} Defendant was the last witness to testify.  Defendant testified that he maintained his own residence throughout the duration of his relationship with Michelle.  He met Michelle in 2004.  They began dating in early 2005.

{¶ 20} According to defendant, he installed a "junk tire" on Michelle's car that flattened during her shift at Giant Eagle.  When he went to change the tire for her, she called the police and made a report.  The charges against defendant that stemmed from that incident were dismissed.

{¶ 21} Defendant denied harassing Michelle by telephone on or about January 15, 2007.  He did admit to meeting her at a Parma Speedway gas station.

According to defendant, Michelle told him to meet her there, where she was to pay him $500 for damaging his car.  But, when he arrived, Michelle was "stalling him" and asking if they could work something out.  He allegedly said she could pay him later and they went to their respective vehicles.  At that point, Parma police arrived, having been contacted by Michelle's daughter's boyfriend, and defendant was arrested.

{¶ 22} Defendant testified that Michelle broke the windows on his car because she was mad at him for watching a television commercial featuring women's underwear.  Defendant said Michelle was jumping up and down on the windshield of his Cadillac with a fence post in her hand, beating every window out of it.  This allegedly caused $22,000 worth of damage to the car. Defendant believed this incident occurred in 2006, possibly 2007.  Michelle purchased a windshield for the car.  Defendant said the basis of this whole case is over his attempts to obtain repayment from Michelle for the damage done to this vehicle. According to defendant, "all this stuff happened in Cleveland."

{¶ 23} Defendant admitted calling Michelle repeatedly demanding his money back and threatening to prosecute her.  He went to the Speedway gas station in Parma to obtain money and was arrested by Parma police.  Defendant admitted Michelle filed police reports in Parma, although he maintained her accusations were "bogus."  According to defendant, Michelle and her daughter's boyfriend "set him up."

{¶ 24} Defendant testified that he eventually got "out of jail with the stalking case from 2007," but was rearrested "for that" on March 12.  Defendant then said "that is what we're in court for here today, from jail I stalked my girlfriend from jail."

{¶ 25} While incarcerated in Parma, defendant attended a preliminary hearing, where he "grilled" Det. Klein for approximately 20 minutes.  Defendant recalled that he was "jumping up and down screaming at the judge."  Defendant acknowledged that the court docket reflects that he waived the preliminary hearing, which he contends is a falsification.  The case was bound over after which defendant posted his bond.

{¶ 26} Defendant was re-arrested on March 12, 2007, and remained in Cuyahoga County jail until December 27, 2007, when allegedly Michelle posted his bond. Almost immediately after departing the jail, defendant says Michelle "flipped her wig" because he asked a group of women for a cigarette.  She allegedly stormed away and left him downtown without a ride.  Then, Michelle had his bond revoked and he was incarcerated again on January 25, 2008.  However, defendant's later testimony is that he was arrested on January 18, 2008 for the "Speedway incident."

{¶ 27} Defendant was released from jail again on September 26, 2008 and took a

bus to Michelle's house to obtain his belongings.  Prior to doing so, defendant notified Michelle he was coming over and, according to him, she said "come on over."  Defendant maintains Michelle welcomed his arrival but her daughter's boyfriend started a commotion and called the police.  Defendant says he simply left.  But, the daughter's boyfriend rallied the neighbors to surround him and hit him.  According to defendant, he lost a tooth.  At this point, defendant ran away to McMahon's junkyard.  Thinking he was being chased and in fear for his life, he was then approached by "the little cop," who told him to freeze and get on the ground.  Defendant said he did not comply because he did not want to get dirty, which resulted in him being tasered.  Defendant attempted to get up, denied resisting arrest, and stated he was handcuffed.  Defendant alleged the police were civilly liable to him for assaulting and tasering him, but also testified that they were "really nice people" and he understood them "tasing" him.

{¶ 28} Defendant identified joint ex. J as a certified copy of the protection order issued by the Parma Municipal Court judge.  According to defendant, this protection order was from an "old stalking case" he "beat."  Defendant denied ever being in court for a hearing on this order, and denied ever being subject to any prior protection order.  He denied ever seeing the protection order prior to his indictment in this case, and denied that anyone ever told him about the protection order.

{¶ 29} Under cross-examination, defendant stated the Parma Municipal judge gave him a "verbal no-contact-with-the-victim" order but denied receiving the protection order.  At this point, the State presented audio tape conversations of defendant's phone conversations from Parma jail (State's ex. 16), wherein he acknowledged a restraining order.  Defendant insisted he was referring to the verbal no-contact order.  Prior to his case being transferred to the common pleas court, defendant recalls a hearing at which he cross-examined Det. Klein.  Defendant stated his belief that the protection order was void because he did not sign it.

{¶ 30} Defendant recalled his arraignment in county court, but claimed he did not hear anything beyond the amount of the bond because the public defender shut off the microphone.  Nonetheless, the judgment entry reflects not only the bond, but also indicates "no contact with victim, temp protection order is continued." (State's ex. 12.)  Defendant again denied being advised of the protection order.

{¶ 31} When asked if he ever "enter[ed] the business, the residence, school, business, or place of employment of Michelle * * * after the date of th[e] protective order, which was January 13, 2007?" defendant responded, "Yeah."

{¶ 32} When asked if he surrendered "all keys and garage doors to [Michelle's residence]," he said "No. Why would I?"  Defendant admitted he had contact with Michelle but denied intimidating her.

7

{¶ 33} Defendant continued to adamantly maintain he had not seen the protective order prior to his incarceration in the County jail.  According to defendant, the witnesses who testified otherwise were all lying.  Defendant testified that the jail guards simply come to work, write their name in the logbook, proceed to fall asleep, and then fill out the logbook ten minutes before they go home.

{¶ 34} According to defendant, Michelle sent him greeting cards and typed letters and placed money in his account.

{¶ 35} Defendant admitted contacting Michelle by phone from jail, estimating that he called maybe once or twice a day for approximately nine months.  According to defendant, this was "mutual, consensual contact."  He also said he had permission to go to Michelle's residence.

{¶ 36} Defendant acknowledged having prior convictions for domestic violence, aggravated assault, and felonious assault.

{¶ 37} Defendant suggested on re-direct that the reason there were 9,000 phone calls listed to Michelle's number was because he could "dial a phone number a hundred times and never get through once.  Every time it goes on the list."  According to him, he spoke with Michelle once or twice a day.  When asked about his repeated calls to Michelle's voicemail as exemplified by State's ex. 15, defendant responded, "[t]hat's how we communicate.  Actually she was calling me back on many of those."

{¶ 38} The defense rested and renewed its motion for acquittal, which the trial court again denied.

{¶ 39} In CR-516312, the jury found defendant guilty of menacing by stalking in violation of R.C. 2903.211(A)(1) under Count 1, along with a history of violence specification.  The jury also found defendant was the subject of a protection order issued under R .C. 2903.213 or 2903.214 at the time of the commission of the offense in violation of R.C. 2903.211.  The jury found defendant guilty of violating a temporary protection order in violation of R.C. 2919.27(A)(2) as charged in Count 4 and that the violation occurred during the commission of a felony, i.e., menacing by stalking.  The jury found defendant guilty of violating a temporary protection order in violation of R.C. 2919.27(A)(2) as charged in Count 6; however, the jury found that this violation did not occur during the commission of a felony offense.  The jury found defendant not guilty of the remaining counts of the indictment in CR-516312; specifically, Counts 2, 3, and 5.

{¶ 40} In CR-524159, the jury found defendant guilty on all three counts, along with findings that defendant had a history of violence.

{¶ 41} Defendant received the following sentence: in CR-516312, a 12-month

prison term on Count 1; a five-year consecutive prison term on Count 4; and a six-month concurrent jail term on Count 6. In CR-524159, a 12-month concurrent prison term on Counts 1 and 2 to be served consecutive to the sentence imposed in CR-516312; and 90-day concurrent jail term on Count 3. The total aggregate sentence for both cases is seven years.

*State v. McGrath*, Slip Copy, 2010 WL 3721970, *1-*7 (Ohio App. Sept. 23, 2010)

(italics added).

McGrath, *pro se*, filed a timely appeal from both judgments on June 11, 2009.

Also on June 11, 2009, McGrath's court-appointed counsel filed a timely appeal from

both judgments. The state appellate court *sua sponte* dismissed McGrath's *pro se*

appeal for failure to file the trial record.

On October 20, 2009, McGrath filed a second *pro se* brief. McGrath asserted

seventeen assignments of error in his new brief:

I.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by permitting the city of Parma to prosecute a criminal offense in the Court of Common Pleas, when no criminal offense was committed in the city of Parma's political subdivision and/or territorial jurisdiction.

II.  The appellant's conviction of [sic] against the manifest weight of the evidence, in violation of the Ohio and United States Constitutions.

III.  The sufficiency of the evidence does not support the appellant's convictions, in violation of the Ohio and United States Constitutions.

IV.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by forcing the appellant to go through a jury trial wearing county orange clothing over the appellant's objections.

V.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by denying the appellant any discovery.

VI.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional

9

rights by denying the appellant's motion to dismiss for failure to provide a speedy trial.

VII.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by [incorrect] jury instructions and by leaving out one critical word "only" in the jury instructions.

VIII.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by permitting the State to ambush the appellant on the stand with a CD the appellant only heard for the first time once he was testifying on the stand.

IX.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by permitting the State over the appellant's objection to use "void prior criminal cases to enhance a pending criminal case."

X.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by denying the appellant's use of civil discovery of [sic] production of documents, requests for admissions, interrogatories, as a means to gather discovery in his criminal case.

XI.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by not giving an anti-jury nullification jury instruction as the appellant requested.

XII.  The trial court Judge Deena R. Calabrese abused her discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights and was biase [sic] and prejudiced and penalized the appellant for having 2 related criminal cases pending before the court and denied him bail and penalized the appellant with a 7 year sentence stating, "I'm afraid of you & I am afraid of what you might do to me after what you did to the other 2 judges, Judge Gaul and Judge Villanueva," base [sic] on the appellant exposing these 2 other judges for fixing criminal cases and falsifying court's records as a means to secure convictions of the appellants in a prior case, and in the criminal case of Jeffrey C. Keith, Esq., all subject to the county corruption probe, requiring her to recuse herself.

XIII.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional

10

rights in violation of Evidence Rule 404(B), 403(A)] by not suppressing a severely prejudicial "CD" from a case that was dismissed, a "CD" that the trial court stated, "I never heard anything like that in my life, accept [sic] in a movie."

XIV.   The appellant was denied the effective assistance of trial counsel in violation of the Ohio and United States Constitutions, base [sic] on counsel's failure to investigate, failure to object, failure to file motions to suppress.

XV.    The appellant is entitled to a new trial and/or reversal based on the cumulative effects of all issues combined.

XVI.   The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by the appellant was sentenced [sic] to allied offenses of similar import.

XVII.  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights by trying the defendant prior to him [sic] ever being judicially declared competent to stand trial.

(Punctuation, spelling, and typographical errors altered from the original.)[1]

On October 30, 2009, upon motion from McGrath, the state appellate court terminated the representation of McGrath's court-appointed counsel, struck the appellate brief filed by counsel, and allowed McGrath to proceed *pro se.*

---

[1]   McGrath alleges that he actually filed eighteen assignments of error in his appellate brief, including a claim that the trial court erred by permitting the use of incorrect jury forms.  The claim that McGrath filed eighteen assignments of error has implicitly been rejected by the Ohio Supreme Court.  *See* Motion for Leave to File Delayed memorandum in Support of Jurisdiction, Answer, Exh. 20, pp. 1-3 (alleging that his failure to file a timely appeal to the Ohio Supreme Court was due to the state appellate court's failure to rule on an unnumbered 18th assignment of error); and Opinion, May 25, 2011, Ohio Supreme Court, Answer, Exh 21 (denying leave to appeal).  Examination of McGrath's appellate brief reveals that he declared seventeen assignments of error in his table of contents and captioned seventeen assignments of error in the body of his brief.  The state appellate court was justified in believing, therefore, that McGrath asserted seventeen assignments of error in his brief.

On September 23, 2010, the state appellate court affirmed the judgments of the trial court.  McGrath moved for reconsideration of the appellate court's decision, and the court denied this motion.  On October 25, 2010, McGrath moved for *en banc* review of the appellate court's decision.  The appellate court denied this motion on October 28, 2010.  McGrath failed timely to perfect an appeal to the Ohio Supreme Court.

On March 30, 2011, McGrath filed in the Ohio Supreme Court a notice of appeal and motion for a leave to file a delayed appeal from the judgment of the appellate court. On May 25, 2011, the Ohio Supreme Court denied McGrath's motion and dismissed his cause of action.

On April 26, 2011, McGrath filed in the state appellate court a second motion for reconsideration and a second motion for *en banc* review.  The state appellate court denied these motions.

On June 8, 2011, McGrath filed a third motion for delayed reconsideration and a third motion for a rehearing *en banc*.  On June 14, 2011, the state appellate court denied both motions and warned McGrath that he might be sanctioned if he filed any further motions for reconsideration or *en banc* review.

McGrath timely appealed the state appellate court's ruling of June 14, 2011 to the Ohio Supreme Court.  In his amended memorandum in support of jurisdiction, Mcgrath asserted four propositions of law:

> Proposition of Law No. 1:  Whether the failure of the court of appeals to render any decision and opinion on the merits and/or even mention each and every one of the assignments of error raised in an appellant's direct criminal appeal is a denial of the State and Federal Constitutional right to legal redress of injuries, because an appeal is rendered meaningless when a court of appeals fails and/or refuses to decide and render an opinion for each and every issue raised before affirming a defendant's direct criminal appeal.

12

Proposition of Law No. 2:  The trial court abused its discretion and committed reversible and/or plain error and violated the appellant's Ohio and United States Constitutional rights when the appellant was sentenced [sic] to allied offenses of similar import.

Proposition of Law No. 3:  The appellant's conviction is against the manifest weight of the evidence in violation of the Ohio and United States Constitutions.

Proposition of Law No. 4:  The appellant was not provided the proper notification of post release control and his sentence is contrary to law and void.

(Punctuation and capitalization altered from the original.)  On October 19, 2011, the

Ohio Supreme Court denied McGrath leave to appeal and dismissed his appeal as not

involving any substantial constitutional question.

While McGrath's direct appeal was proceeding, McGrath was also prosecuting

an attempt to compel a new trial.  On June 3, 2009, before journalization of sentence,

McGrath filed in the trial court a motion to arrest judgment and dismiss his case

pursuant to Ohio Crim. R. 12 and 29 or, in the alternative, for a new trial pursuant to

Ohio Crim. R. 33.  His motion asserted three arguments in support:

I.  The defendant was judicially declared mentally incompetent & ordered committed in case CR-493644 & has never been judicially declared competent, rendering this sentence & conviction void.

II.  Between 3-12-07 to 9-26-08 the defendant & alleged victim had mutual and consensual contact in the city of Cleveland, not the city of Parma, and therefore pursuant to R.C. § 2935.03 all criminal charges brought before this court by Parma is [sic] invalid and/or void due to the contact being outside Parma's territorial jurisdiction and political subdivision.

III.  The state withheld discovery in violation of the Ohio and U.S. Constitutions.

(Punctuation, capitalization, and emphasis altered from the original.)  On December 15,

2010, McGrath filed an amended motion for a new trial.  The amended motion asserted

the following:

13

I.     The state was unlawfully permitted to bootstrap the information and
       evidence, such as State Ex. 16, compact disc from dismissed unrelated
       cases, such as Case 06-CRB-05647, Case 07-CRA-00273, CR-493644,
       requiring a dismissal, arrest of judgment, and/or a new trial.

II.    The temporary protection order utilized in this case that the defendant
       allegedly violated was not issued in accordance with procedural due
       process and prior notice of any hearing and is, therefore, void.

III.   The temporary protection order is void because R.C. § 2903.213, R.C. §
       2903.214 is [sic] unconstitutional and in conflict with Ohio Civ. R. 65 which
       mandates that prior notice in accordance with procedural due process
       rights pursuant to the Ohio and United States Constitutions must be
       provided before issuance of an injunction.

IV.    The temporary protection order issued in accordance with R.C. §
       2903.213, R.C. § 2903.214 is an interlocutory order, and interlocutory
       orders do not extend beyond final decree and are terminated unless
       extended during an appeal.

V.     The defendant's conviction was the product of perjured testimony by the
       state's witnesses in violation of the Ohio and United States constitutions,
       and a new trial is warranted.

VI.    The defendant was subjected to a bias [sic] and partial judge motivated by
       her own personal fears about the defendant, who vindictively sentenced
       him in reprisal for the reasons set forth in the affidavit of prejudice filed
       before the court, in violation of the Ohio and United States Constitutions,
       rendering the conviction and sentence void.

VII.   The convictions for violation of a temporary protection order at F3[2] is in
       violation of the Ohio and United States constitutions, contrary to law, and
       in violation of R.C. § 2945.75(A)(2), based on the jury verdict forms.

VIII.  The defendant was denied the effective assistance of trial counsel in
       violation of the Ohio and United States constitutions.

IX.    The defendant's motion is not barred by *res judicata*, and to do so would
       be in violation of the Ohio and United States constitutions.

(Enumeration, spelling, punctuation, capitalization, emphasis, and spacing altered from

---

[2]  "Felony level three" under Ohio law, a designation for purposes of sentencing.

the original.)  Also on December 15, 2010McGrath filed a Motion for Arrest of Judgment,

Dismiss, and/or New Trial.  On December 20, 2010, the trial court denied McGrath's

motions filed on December 15, 2010.[3]

On July 1, 2011, McGrath filed in the state appellate court a notice of delayed

appeal from the trial court's December 20, 2010 decision.  On July 27, 2011, the state

appellate court denied leave to file a delayed appeal.

McGrath timely filed in the Ohio Supreme Court a notice of appeal of the state

appellate court's decision of July 27, 2011.  In his memorandum in support of

jurisdiction, McGrath asserted nine propositions of law:

> Proposition of Law One:  When a trial court and/or clerk of court fails and/or refuses to timely serve a journal entry in a criminal case within 30 days, the time tolls to file an appeal from any final appealable orders until such time that the journal entry is served, pursuant to Ohio Civ. R. 5 and 58(B).
>
> Proposition of Law Two:  The courts of appeals shall grant a delayed appeal, pursuant to Ohio App.R. 5 when trial court and/or clerk of court fails and/or refuses to timely serve a final appealable order and journal entry in a criminal case within 30 days.
>
> Proposition of Law Three:  The temporary protection Order utilized in this case that the defendant allegedly violated was not issued in accordance with procedural due process and prior notice of any hearings and is therefore void.
>
> Proposition of Law Four:  The temporary protection order is void because R.C. § 2903.213; R.C. § 2903.214 is [sic] unconstitutional and in conflict with Ohio Civ.R. 1, 65 which mandates that prior notice in accordance with procedural due process pursuant to the Ohio and United States Constitutions must be provided before the issuance of an injunction.
>
> Proposition of Law Five:  The temporary protection order is void because R.C. § 2903.213; R.C. § 2903.214 is an interlocutory order and interlocutory orders do not extend beyond final decree and are terminated unless extended during

---

[3]   The trial court also denied a series of subsequent motions to amend or supplement McGrath's motion for a new trial.

appeal.

Proposition of Law Six:  The defendant's conviction was the product of perjured testimony by the state's witness in violation of the Ohio and United States Constitutions and a new trial is warranted.

Proposition of Law Seven:  The defendant was subjected to a bias [sic] and partial judge motivated by her own personal fears about the defendant who vindictively sentenced him in reprisal for the reasons set forth in the affidavit of prejudice filed before the court, in violation of the Ohio and United States Constitutions, rendering the conviction and sentence void.

Proposition of Law Eight:  The convictions for violation of a temporary protection order at F3 is in violation of the Ohio and United States Constitutions, contrary to law and in violation of R.C. § 2945.75(A)(2), based on the jury verdict forms.

Proposition of Law Nine:  The defendant was denied the effective assistance of trial counsel, in violation of the Ohio and United States Constitutions.

(Capitalization and punctuation altered from the original.)  On November 30, 2011, the Ohio Supreme Court denied McGrath leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On December 10, 2010, McGrath filed in the trial court a motion for jail-time credit.  On December 16, 2011, McGrath filed in the trial court an Application for Order Allowing Motion for New Trial Based on Newly Discovered Evidence.  In his application, McGrath submitted three affidavits in support of the proposition that the victim had testified falsely during his trial.  On December 29, 2011, the trial court denied McGrath's application without opinion.  McGrath did not appeal this decision.

In addition to his direct appeal and attempts to reverse his conviction and retry his case, McGrath also sought postconviction relief pursuant to Ohio Rev. Code § 2953.21.  On February 23, 2011, McGrath filed in the trial court a petition for postconviction relief, asserting eight grounds for relief:

16

Claim One:

The temporary protection order was issued in accordance with unconstitutional statues R.C. 2903.213; R.C. 2903.214 and is unenforceable and void, thereby divesting the trial court of subject matter jurisdiction over the prosecution for any violations of the void order.

Claim Two:

The temporary protection order was not issued in accordance with procedural due process, substantial [sic] due process, equal protection guarantees of the Ohio and United States Constitutions, and notice before its issuance, rendering the order unenforceable and void, thereby divesting the trial court of subject matter jurisdiction over the prosecution for any violations of the void order.

Claim Three:

The *ex parte* interlocutory temporary protection order automatically terminated, pursuant to R.C. § 2903.213(E)(2), at the conclusion of case CR-493644, on 12-19-2007 and/or 3-2008 and was not extended by the trial court during any appeal in the final decree and/or sentencing journal entry, rendering the order unenforceable and void, thereby divesting the trial court of subject matter jurisdiction over the prosecution for any violations of the void order after these dates.

Claim Four:

The ex parte interlocutory temporary protection order statutes R.C. § 2903.213, R.C. § 2903.214 are in conflict with Ohio Civ. R. 1, 65 and unenforceable and void, thereby divesting the trial court of subject matter jurisdiction over the prosecution for any violations of the void order.

Claim Five:

The trial court's failure to impose appropriate post release control notification, pursuant to R.C. § 2967.28 rendered the defendant-petitioner's sentence void.

Claim Six:

The statute R.C. § 2929.191 is in conflict with Crim. R. 32 and unenforceable, unconstitutional, and void.

Claim Seven:

The trial court is divested of jurisdiction to re-sentence the defendant-petitioner based on the delay in valid sentencing, Crim. R. 32.

17

Claim Eight:

> The statute R.C. § 2953.21 and R.C. § 2953.23 are in conflict with Civ. R. 1,
> Crim. R. 1, 35, 47, unconstitutional, and void.

(Punctuation, emphasis, spacing, and capitalization altered from the original.)  On

March 7, 2011, McGrath filed a motion for summary judgment, and on March 8, 2011

moved, *inter alia*, for the issuance of findings of fact and conclusions of law if the court

were to deny his motion.  The trial court denied without opinion McGrath's motion for

summary judgment on March 10, 2011 and denied without opinion his motion for

findings of fact and conclusions of law on March 14, 2011.  On August 16, 2011, the trial

court found McGrath's petition for postconviction relief to be untimely and, as none of

the exceptions to timely filing applied, found the court lacked jurisdiction to consider the

petition.  Also on August 16, 2011, the trial court granted in part McGrath's motion of

December 10, 2010 for jail time credit, granting him 247 days rather than the 258 days

requested.

McGrath timely filed in the state appellate court an appeal from the trial court's

August 16, 2011 decisions.  In his brief in support of his appeal, McGrath asserted six

assignments of error:

Assignment of Error One:

> The trial court committed plain error by its failure to merge allied offenses of
> similar import, pursuant to R.C. § 2941.25, *State v. Johnson* (2010), 128 Ohio
> St.3d 153, 942 N.E.2d 1061, the Ohio and United States Constitutions.

Assignment of Error Two:

> The trial court errored [sic] by not vacating the void judgment in accordance with
> its inherent powers to do so, as the temporary protection order was issued in
> accordance with unconstitutional statutes, R.C. § 2903.213, R.C. § 2903.214,
> both in conflict with Ohio Civ. R. 1, Ohio Civ. R. 65, and void, thereby divesting

18

the trial court of subject matter jurisdiction over the prosecution for any violations of the void order, and the trial court committed plain error by its failure to vacate the void judgment pursuant to its inherent powers in violation of the Ohio and United States Constitutions.

Assignment of Error Three:

The trial court errored [sic] by not vacating the void judgment in accordance with its inherent powers to do so, as the temporary protection order was not issued in accordance with procedural due process, substantial [sic] due process, equal protection guarantees of the Ohio and United States Constitutions and notice before its issuance, rendering the order unenforceable and void, thereby divesting the trial court of subject matter jurisdiction over the prosecution for any violations of the void order.

Assignment of Error Four:

The trial court errored [sic] by not vacating the void judgment in accordance with its inherent powers to do so, as the temporary protection order automatically terminated pursuant to R.C. 2903.213(E)(2) at the conclusion of the case it was issued for and was not extended by the trial court during any appeal in the final decree and/or sentencing journal entry, rendering the order unenforceable and void, thereby divesting the trial court of subject matter jurisdiction over the prosecution for any violations of the void order.

Assignment of Error Five:

The statutes R.C. § 2953.21, R.C. 2953.23 are in conflict with Ohio Civ. R. 1, Crim. R. 1, Crim .R. 35, Crim. R. 47, and unconstitutional.

Assignment of Error Six:

The trial court abused its discretion by its failure to properly calculate the correct number of day of jail time credit the appellant is entitled to and to incorporate the days in the journal entry.

(Punctuation, spelling, and spacing altered from the original.)

On March 1, 2012, the state appellate court affirmed the judgments of the trial court.  In its opinion, the appellate court found that McGrath had failed to raise his first assignment of error in his petition and that the court was, therefore, without jurisdiction to consider the issue.  In addition, the appellate court found that consideration of the

19

issue was barred by *res judicata*.  The court also found that McGrath's second, third, and fourth assignments of error were defaulted because his petition for postconviction relief was untimely and because they were barred by *res judicata*.  Despite the untimeliness of McGrath's petition, the state appellate court reached the merits of McGrath's fifth assignment of error and overruled it.  The appellate court found that the fifth assignment of error, which claimed that the statutes providing postconviction relief were unconstitutional because they did not provide time for discovery, was meritless because (1) there is no constitutional right to discovery in postconviction proceedings, (2) the rules of civil procedure do not apply to postconviction proceedings, and (3) the 180-day limit for filing a petition for postconviction relief has been found constitutional and allows for exceptions to the time limit.  Finally, the appellate court overruled the sixth assignment of error because McGrath failed to provide sufficient documentation to demonstrate that the trial court had miscalculated the amount of jail-time credit due him.  McGrath moved for reconsideration, and the appellate court denied the motion without opinion.

McGrath timely filed in the Ohio Supreme Court a notice of appeal of the state appellate court's decision.  In his memorandum in support of jurisdiction, McGrath asserted seven propositions of law:

> Proposition of Law One:  When a trial court sentences a defendant to a greater sentence than authorized by statute when the offenses are allied offenses of similar import, R.C. 2941.25, is the sentence contrary to law and void and open to collateral attack at any time by any party?
>
> Proposition of Law Two:  When a sentence is an allied offense of similar import, are courts required to resentence a defendant *de novo* pursuant to the retrospective decision of *State v. Johnson*, 128 ohio st.3d 153, *Walters v. Sheets*, 2011 WL 4543889 (S.C. [sic] Ohio) (writ granted) and disregard the doctrine of

*res judicata* of law of the case?

Proposition of Law Three:  Are appellate courts required to recognize a sentence that is an allied offense of similar import, pursuant to Crim. R. 52 (b), when this fact can be determined by the face of the record even though the issue may or may not have been brought to the trial courts (sic.) attention?

Proposition of Law Four:  Does a court error [sic] by not vacating a void judgment in accordance with its inherent powers to do so for a conviction for violating a temporary protection order that was issued in accordance with unconstitutional statutes, R.C. 2903.213, R.C. 2903.214, both in conflict with Ohio Civ. R. 1, Ohio Civ. R. 65, pursuant to the Ohio and United States Constitutions?

Proposition of Law Five:  Does a court error [sic] by not vacating a void judgment in accordance with its inherent powers to do so, when a conviction for violating an *ex parte* temporary protection order that was not issued in accordance with procedural due process, substantial due process [sic], equal protection guarantees of the Ohio and United States constitutions and notice before its issuance, render the order unenforceable and void?

Proposition of Law Six:  Does a court error [sic] by not vacating a void judgment in accordance with it's inherent powers to do so, when a conviction for violating an *ex parte* temporary protection order was the result of a violation after the order would have lawfully terminated after the disposition of the case it was issued for, pursuant to R.C. 2903.213(e)(2)?

Proposition of Law Seven:  Does a trial court act outside of its jurisdiction by failing to credit the exact number of days jail time credit a defendant is entitled to pursuant to R.C. 2967.191, R.C. 2949.08(d), Crim. R. 32(d), and is the sentence contrary to law and open to collateral attack and not be barred by *res judicata* or law of the case?

(Punctuation, italics, capitalization, and spelling altered from the original.)  On May 23, 2012, the Ohio Supreme Court denied McGrath leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On January 4, 2012, McGrath filed in the trial court a second petition for postconviction relief, citing *State v. Meincke*, 2011 WL 6317376 (Ohio App. Dec. 15, 2011), and *State v. Johnson*, 128 Ohio St.3d 153, 942 N.E.2d 1061 (2010), as justifying the trial court's consideration of a second petition for postconviction relief.  The trial

21

court has not as yet ruled on this petition.

On September 26, 2011, McGrath filed in this court a petition for a federal writ of habeas corpus.  In his third amended petition, McGrath asserts fourteen grounds for relief:

Ground One:  The trial court abused its discretion and committed plain error and violated the petitioner's Ohio and United States constitutional rights by permitting the city of Parma to prosecute a criminal offense in the Court of Common Pleas, when no criminal offense was committed in the City of Parma's political subdivision and/or territorial jurisdiction.

Ground Two:  The petitioner's convictions are against the manifest weight of the evidence, in violation of the Ohio and United States Constitutions.

Ground Three:  The sufficiency of the evidence does not support the petitioner's convictions, in violation of the Ohio and United States Constitutions.

Ground Four:  The trial court abused its discretion and committed plain error in violation of the Ohio and United States Constitutions by forcing the petitioner to go through a jury trial wearing county orange clothing over the petitioner's objections.

Ground Five:  The trial court abused its discretion and/or committed plain error by denying the petitioner any discovery in violation of the Ohio and United States Constitutions.

Ground Six:  The trial court abused its discretion and/or committed plain error, in violation of the Ohio and United States Constitutions by providing incorrect jury instructions by leaving out one critical word "only" in the jury instructions.

Ground Seven:  The trial court abused its discretion and/or committed plain error in violation of the Ohio and United States Constitutions by permitting the State to ambush the petitioner on the stand with State's Ex. 16, Compact Disk . . . that the petitioner only heard for the first time while testifying.

Ground Eight:  The petitioner was tried, convicted and sentenced before a biased judge, in violation of the Ohio and United States Constitutions, rendering the trial, conviction and sentence void.

Ground Nine:  The trial court abused its discretion and/or committed plain error by sentencing the petitioner to allied offenses of similar import . . . in violation of the Ohio and United States constitutions.

22

Ground Ten:  The petitioner's trial, conviction, sentence for violating a temporary protection order issued pursuant to R.C. § 2903.213, R.C. § 2903.214, is void, as both statutes are unconstitutional and in conflict with Ohio Civ. R. 1, Ohio Civ. R. 65.

Ground Eleven:  The petitioner's Ohio and United States constitutional rights were violated when he was prosecuted for violating a temporary protection order that has [sic] expired.

Ground Twelve:  The petitioner was denied the effective assistance of trial counsel, in violation of the Ohio and United States Constitutions.

Ground Thirteen:  The trial court acted outside of its jurisdiction by failing to credit the petitioner with the exact number of days of jail time credit he was entitled to in the sentencing journal entry, in violation of the Ohio and United States constitutions.

Ground Fourteen:  The trial court was without jurisdiction to prosecute the petitioner and his conviction is void because the trial court allowed the State of Ohio to prosecute the petitioner before he was judicially declared competent to stand trial . . . in violation of the Ohio and United States constitutions.

(Punctuation, spelling, capitalization, and spacing altered from the original.) Respondent filed an Answer/Return of Writ on July 16, 2012.  Doc. No. 25.  McGrath filed a traverse on October 12, 2012.  Doc. No. 46.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced McGrath. McGrath filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted

23

and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic jurisdiction.  This court has jurisdiction over McGrath's petition.

Respondent argues, however, that claims one, two, nine, and thirteen are not cognizable in habeas proceedings.  Such a claim is a challenge to a habeas court's subject matter jurisdiction.  The court shall examine respondent's arguments with respect to these claims.

> 1.    *Ground one: The trial court abused its discretion and committed plain error and violated the petitioner's Ohio and United States constitutional rights by permitting the city of Parma to prosecute a criminal offense in the Court of Common Pleas, when no criminal offense was committed in the City of Parma's political subdivision and/or territorial jurisdiction*

Respondent contends that because McGrath alleges an abuse of discretion, this claim is not cognizable in habeas proceedings.  In reviewing the decision of state courts, this court does not consider questions of state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,* 497 U.S. 764 (1990);  see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . .  [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "Only where the violation of state law is also a violation of federal law may the error support a claim under federal habeas."  *Sinistaj v. Burt*, 66 F.3d 804, 807 (6th Cir. 1995) (citing *Estelle*, 502, U.S. at 68).  Failure to raise a constitutional issue in a ground for habeas relief deprives a court of subject matter jurisdiction over that claim.  *See Lambert v. Davis*, 449 F.3d 774, 778-9 (7th Cir. 2006) (citing 2254(a) and *Estelle*); *Thomas v. Rowland*, 990 F.2d 1260 (9th Cir. 1993).

24

Thus, whether the trial court erred under Ohio law in trying McGrath is a question beyond the subject matter jurisdiction of this court.[4]

Respondent also cites *Sinistaj* for the proposition that a state court's abuse of discretion is not a federal constitutional violation. That blanket proposition goes further than the opinion of the *Sinistaj* court, which was somewhat more circumspect:

> Neither the district court nor the petitioner has cited a case standing for the proposition that when a state court abuses its discretion in denying a defendant's motion to withdraw a previously filed waiver of jury trial, the result is a violation of the United States Constitution. Moreover, not surprisingly, our own research has failed to turn up any such authority. It is possible, of course, at least in theory, that a state court's refusal to permit a defendant to withdraw a previously filed jury trial waiver could amount to an unconstitutional denial of the defendant's Sixth Amendment right to a jury trial. But we can conceive of no situation in which a federal judicial determination on *habeas* collateral review that a state court, as a matter of general law, abused its discretion in denying the withdrawal motion is *therefore* a violation of the federal Constitution.

*Sinistaj*, 66 F.3d at 808.

In any case, inspection of the arguments supporting McGrath's claim reveals that his federal constitutional claim is not an abuse of discretion in wrongly assuming jurisdiction *per se*. Such a claim, indeed, would not be cognizable in habeas proceedings, as it would rest on an interpretation of state law and the failure of the trial judge to comply with state law requirements. *See Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986). Rather, McGrath claims that a Parma city detective falsified a criminal complaint by giving knowingly false testimony that McGrath's wrongful acts were committed in Parma, which testimony was then used fraudulently to acquire jurisdiction in Parma. Depending upon the facts, such a claim, if proven, might constitute a federal

---

[4] Moreover, McGrath's claim is factually wrong, since he was not prosecuted by the City of Parma. McGrath was prosecuted in Cuyahoga County by the State of Ohio.

25

constitutional violation.  *See, e.g.,  Hamilton v. McCotter*, 772 F.2d 171, 184 (5th Cir. 1985) (holding that although there is no federal constitutional right to an indictment, habeas relief may lie if an indictment is so fundamentally defective as to deprive the court of jurisdiction to try the cause).

In light of this court's requirement to construe the pleadings of *pro se* litigants liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), McGrath's first ground for relief is not, on its face, beyond this court's jurisdiction.  Consequently, respondent's argument to the contrary is not well-taken.

    *2.    Ground two:  McGrath's conviction was against the manifest weight of the evidence*

In his second ground for relief, McGrath argues that his conviction was against the manifest weight of the evidence.  Respondent replies that this claim is not cognizable in habeas proceedings.

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a

26

reasonable doubt.  *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).  Any conviction based upon evidence sufficient to convince any rational trier of fact of the essential elements of the crime without a reasonable doubt offends the due process clause and may serve as grounds for habeas relief.

A claim that a conviction is against the manifest weight of the evidence differs from a claim that a conviction was based on insufficient evidence:

> With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law."  Black's Law Dictionary (6 Ed.1990) 1433.  See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction).  In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.  In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra,* 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."  (Emphasis added.)  Black's, *supra,* at 1594.

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its

27

way and created such a manifest miscarriage of justice that the conviction must
be reversed and a new trial ordered.  The discretionary power to grant a new trial
should be exercised only in the exceptional case in which the evidence weighs
heavily against the conviction.").

*State of Ohio v. Thompkins*, 78 Ohio St. 3d 380, 387-88, 678 N.E.2d 541, 546-47

(1997).  *See also Tibbs v. Florida*, 457 U.S. 31, 37-38, 38 n.11 (1982); *Jackson v.*

*Virginia*, 443 U.S. 307, 318-19 (1979).

A federal court reviewing a petition for a writ of habeas corpus has no authority to

re-weigh the credibility of witnesses at trial.  *Marshall v. Lonberger*, 459 U.S. 422

(1983).  It is incapable, therefore, of determining whether a conviction was against the

manifest weight of the evidence.  It may only determine whether a conviction was based

on *sufficient* evidence.  McGrath's claim that his conviction was against the manifest

weight of the evidence, therefore, is not cognizable in federal habeas corpus.  For this

reason, McGrath's second ground for relief should be dismissed as outside the court's

subject matter jurisdiction.

> 3.      *Claim nine: The trial court abused its discretion and/or committed plain
>         error by sentencing the petitioner to allied offenses of similar import in
>         violation of the Ohio and United States constitutions*

Respondent also contends that McGrath's ninth ground for relief, alleging that the

trial court misapplied Ohio's sentencing statutes in sentencing him to separate

sentences upon offenses that were allegedly allied offenses of similar import, is beyond

this court's subject matter jurisdiction.

As already described, habeas relief is not available for errors of state law.  In

particular, "a claim that the trial court violated state law when sentencing a prisoner is

not cognizable in a habeas corpus proceeding."  *Terry v. Trippett*, 1995 WL 469424, at

28

*1 (6th Cir. Aug. 7, 1995) (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.

1988)); *See also Wilcox v. Littlefield*, 1995 WL 98822, at *2 (6th Cir. Mar. 8, 1995);

*Cheatham v. Hosey*, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993).  Thus, whether

the trial court correctly applied Ohio's sentencing statutes in sentencing McGrath is a

matter beyond this court's subject matter jurisdiction.  For this reason, McGrath's ninth

ground for relief should be dismissed on jurisdictional grounds.

> 4.    *Claim thirteen:  The trial court acted outside of its jurisdiction by failing to credit the petitioner with the exact number of days of jail time credit he was entitled to in the sentencing journal entry, in violation of the Ohio and United States constitutions*

Respondent also contends that McGrath's thirteenth ground for relief, alleging a

failure to apply properly Ohio's sentencing statutes in computing jail time credit, is also

beyond this court's subject matter jurisdiction.  As described above, a state court's

misapplication of the state's sentencing statutes is not cognizable in habeas

proceedings.  In particular, the proper application of a state's crediting statutes is not

cognizable in habeas.  *See Howard v. White*, 2003 WL 22146139, at *2 (6th Cir. Sept.

16, 2003) (citing *Travis v. Lockhart*,  925 F.2d 1095, 1097 (8th Cir.1991); *Branan*, 861

F.2d 1507).  Consequently, McGrath's thirteenth ground for relief must also be

dismissed as beyond this court's subject matter jurisdiction.

For the reasons given above, McGrath's second, ninth, and thirteenth grounds

for relief should be dismissed on jurisdictional grounds.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited

circumstances when the factual basis of a claim has not been adequately developed in

29

state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary

hearing in the instant case.  All of McGrath's remaining claims involve legal issues that

can be independently resolved without additional factual inquiry.

*C.*      *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining

state remedies available prior to seeking review of a conviction via federal habeas

corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989);

*Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief

remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17

F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional

context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982);

*Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir.

1989).  "[O]nce the federal claim has been fairly presented to the state courts, the

exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v.*

*Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly

satisfied when the highest court in the state in which petitioner was convicted has been

given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v.*

*Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity

between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in
> the enforcement of federal law and prevent disruption of state judicial
> proceedings. . . . Because "it would be unseemly in our dual system of

30

> government for a federal district court to upset a state court conviction without an
> opportunity to the state courts to correct a constitutional violation," federal courts
> apply the doctrine of comity, which "teaches that one court should defer action on
> causes properly within its jurisdiction until the courts of another sovereignty with
> concurrent powers, and already cognizant of the litigation, have had an
> opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204

(1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition

containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

McGrath has no state remedies available for his claims.  Because no state

remedies remain available to him, McGrath has exhausted state remedies.

D.     *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of

"contentions of federal law . . .  not resolved on the merits in the state proceeding due to

respondent's failure to raise them there as required by state procedure."  *Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must

conduct a four-step analysis to determine whether the petitioner has indeed defaulted

and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with the
> rule. . . . Second, the court must decide whether the state courts actually
> enforced the state procedural sanction.  . . . Third, the court must decide whether

the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends that McGrath has defaulted his first, third, fourth, fifth, sixth, seventh, eighth, tenth, twelfth, and fourteenth grounds for relief.  The court shall examine this contention in two groups:  default and McGrath's first, third, fourth, fifth, sixth, seventh, eighth, twelfth, and fourteenth grounds for relief and default and McGrath's tenth ground for relief.

> 1.    *Default and McGrath's first, third, fourth, fifth, sixth, seventh, eighth, twelfth, and fourteenth grounds for relief*

McGrath presented his first, third, fourth, fifth, sixth, seventh, eighth, twelfth, and fourteenth grounds for relief to the Ohio Supreme Court in a motion pursuant to Ohio S. Ct. Prac. R. II, § 2(A)(4)(a) for a leave to file a delayed appeal from the judgment of the appellate court.  The Ohio Supreme Court denied McGrath's motion and dismissed his cause of action.

Denial of review pursuant to Ohio S. Ct. Prac. R. II, § 2(A)(4)(a) is an adequate and independent ground upon which Ohio may rely to foreclose habeas review.  *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 431-32 (6th Cir.

2006).  Appellants applying for delayed appeal to the Ohio Supreme Court and having

received a denial of their application have procedurally defaulted their claims.  *Bonilla v.*

*Hurley*, 370 F.3d 494 (6th Cir. 2004).[5]  Consequently, McGrath must demonstrate cause

and prejudice for his failure to file a timely appeal to the Ohio Supreme Court within 45

days of the entry of judgment in the state appellate court, pursuant to Ohio S. Ct. Prac.

R. II, § 2(A) or demonstrate that enforcing the procedural default would result in a

miscarriage of justice.

> 2.      *Default and McGrath's tenth ground for relief*

Respondent also contends that McGrath has defaulted his tenth ground for relief,

alleging that his constitutional rights were violated when he was convicted of violating a

protective order issued pursuant to unconstitutional state statutes.  McGrath presented

this claim to the Ohio Supreme Court on appeal from an untimely petition for

postconviction relief.  The state appellate court dismissed this claim on appeal as

defaulted because McGrath's petition for postconviction relief was untimely and

because the claim was barred by *res judicata*. The Ohio Supreme Court dismissed

McGrath's request for jurisdiction to hear his appeal without opinion.

Ohio's limitations on the scope of postconviction relief and its use of *res judicata*

to bar postconviction relief are adequate and independent state grounds on which Ohio

can rely to foreclose review of a federal constitutional claim.  *See Coleman v. Mitchell*,

268 F.3d 417, 427 (6th Cir. 2001); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

---

[5]  McGrath argues that because the Ohio Supreme Court's order was unexplained it did not serve to enforce the procedural bar.  This contradicts the Sixth's Circuit's holding in *Bonilla* and is not well-taken.

The state appellate court explicitly enforced that bar, and the Ohio Supreme Court's unexplained decision not to accept McGrath's appeal for review is read as affirming the decision of the appellate court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").  Consequently, McGrath must demonstrate cause and prejudice for his default or demonstrate that enforcing the procedural default would result in a miscarriage of justice.

> 3.    *Whether enforcing the defaults would result in a miscarriage of justice*

McGrath argues that enforcing his defaults would result iin a miscarriage of justice.  He alleges that he is actually innocent of the charges against him and that his conviction was the product of fraud by the state.  Innocence is not a ground for habeas relief, although demonstrating a credible claim of innocence allows a federal court to review the merits of an otherwise procedurally-defaulted claim.  *See Herrera v. Collins*, 506 U.S. 390 (1993).  A petitioner seeking to avoid procedural default upon a claim of innocence "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  The "no reasonable juror" standard is demanding and permits waiver of a default only in an extraordinary case.  *House*, 547 U.S. at 538.  A claim of innocence requires new, reliable evidence that was not presented at trial, although the habeas court's analysis of a petitioner's claim of innocence is not limited to such evidence and should include all the evidence in the record.  *Id.* at 537-38.  When considering the

34

reliability of the new evidence, "the District Court need not 'test the new evidence by a standard appropriate for deciding a motion for summary judgment,' but rather may 'consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.'" *Id.* (quoting *Schlup*, 513 U.S. at 331-32).

McGrath supports his claim of innocence with allegations that he was wrongly convicted when Ohio knowingly ignored jurisdictional requirements and disregarded discovery obligations to obtain his conviction.  These are legal conclusions, not "new, reliable evidence."  Moreover, his legal conclusions are wrong.  McGrath claims that the Parma Municipal Court lacked jurisdiction to enforce its order requiring him to stay away from Michelle when the violation took place outside the court's geographic jurisdiction. This argument is irrelevant because the Parma Municipal Court did not try McGrath for violating the order.  The Cuyahoga County grand jury indicted McGrath for violating a temporary protection order, and the Cuyahoga County Court of Common Pleas tried and convicted him.  McGrath violated the order in Cuyahoga County, and, in Ohio, a county court of common pleas has jurisdiction over all felonies committed in the county. *See* Ohio Rev. Code § 2931.03.  The jurisdiction of the Parma Municipal Court is irrelevant to McGrath's case.

McGrath's belief that the use of recordings of his jailhouse telephone conversations to impeach his testimony at trial violated discovery rules is similarly mistaken.  Ohio prosecutors are not required to produce evidence that might be used to impeach a defendant; they are only required to produce evidence that a defendant might use to impeach the state's witnesses.  *See United States v. Bagley*, 473 U.S. 667, 674 (1985) (holding that evidence must be produced only when it is material to his guilt

or innocence *and* favorable to the accused).  Within the limits imposed by *Bagley* and *Brady v. Maryland*, 373 U.S. 83 (1963), an Ohio prosecutor has discretion to decide what evidence to turn over to a defendant.  *See State v. Sanders*, 92 Ohio St.3d 245, 261, 750 N.E.2d 90 (2001).  There is no requirement in federal or Ohio law that material which might be used to impeach a defendant's testimony at trial be turned over to the defendant in discovery.

McGrath fails to present new, reliable evidence demonstrating that had such evidence been presented at trial it is likely that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  Consequently, McGrath fails to establish a claim of actual innocence.  For this reason, his procedural defaults should not be excused.  McGrath's first, third, fourth, fifth, sixth, seventh, eighth, tenth, twelfth, and fourteenth grounds for relief should be dismissed as procedurally defaulted.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in

36

light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine McGrath's remaining ground for relief using the deferential standard applied to state court rulings on a petitioner's claims.

In his eleventh ground for relief, McGrath contends that the state violated his federal constitutional rights by prosecuting him for violating a protection order that had expired.  The protective order was issued in Case No. Cr-493644, a case generating no claims in McGrath's present habeas petition.  McGrath pleaded guilty in that case, then

appealed the trial court's acceptance of his guilty plea and prevailed on appeal. According to McGrath, once he pleaded guilty in that case and jeopardy ended, the protection order automatically expired.  As McGrath believes that the protection order expired when he pleaded guilty on December 19, 2007, he concludes that he could not be criminally prosecuted for allegedly violating that order on the basis of conduct after that date because the order no longer existed.

Although it is not clear from the caption of his argument, McGrath also argues that the state violated his federal constitutional rights by failing to give him notice of the protective order.  McGrath argues that because he did not receive notice of the order, as evidenced by the fact that he never signed the order, his due process rights were violated when he was prosecuted for violating the order.

The state appellate court hearing McGrath's direct appeal wrote the following regarding these claims:

> It is true that defendant did not acknowledge receipt of the protection order by signature and, in fact, adamantly maintains he did not know about it until his trial. However, the State presented the testimony of various witnesses, who described the process that was employed to serve defendant with a copy of the protection order in jail.  The record also contains recorded conversations that took place during defendant's incarceration in the Parma jail between defendant and Godale, where the existence of a protection order is discussed. (State's ex. 16.)

> *       *       *       *       *

> {¶ 62} The menacing by stalking charges in Parma were bound over to the common pleas court on January 24, 2007, where the order of protection was continued in CR-493644.  Defendant maintains the protection order expired when he entered his guilty plea in that case.  However, defendant pursued an appeal in that case and, among other things, successfully challenged the trial court's acceptance of his guilty plea.  The criminal proceedings in CR-493644 therefore continued until October 14, 2009, when that case was dismissed by the common pleas court without prejudice.FN8   Finally, the defense stipulated that CR-493644 was pending during the dates covered by the indictment being tried

38

in this case. Defendant acknowledged that he understood this stipulation.

FN8. The cases upon which defendant relies in suggesting the criminal proceedings were disposed of upon the trial court's acceptance of his plea have no relevance to this issue.  These cases involve whether a court's acceptance of a guilty plea on a lesser offense bar prosecution of other charges on the basis of double jeopardy.  *See State ex rel. Leis v. Gusweiler* (1981), 65 Ohio St.2d 60, 418 N.E.2d 397; *State ex rel. Sawyer v. O'Connor* (1978), 54 Ohio St.2d 380, 377 N.E.2d 494; *State v. Knaff* (1998), 128 Ohio App.3d 90, 713 N.E.2d 1112. None of them involve a situation where a plea is vacated on appeal and remanded to the trial court for further proceedings on the criminal charges.

*State v. McGrath*, Slip Copy, 2010 WL 3721970 (Ohio App. Sept. 23, 2010).

To the extent that McGrath challenges the decision of the state appellate court because its findings of fact were allegedly erroneuous, McGrath must demonstrate that the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented during McGrath's trial.  McGrath provides no such demonstration.  To the extent that McGrath challenges the decision of the state appellate court's decision based on its interpretation of Ohio law, such a challenge is beyond the subject matter jurisdiction of this court.  Habeas relief does not lie for errors of state law and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."

*Estelle*, 502 U.S. at 68.

McGrath fails to demonstrate that the state appellate court's determinations that the protection order had not expired and that he received proper notice of the order resulted in a decision that was contrary to, or involved an unreasonable application of a holding of the Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at his trial. McGrath is not entitled, therefore, to habeas relief.  For this reason, McGrath's eleventh

ground for relief should be dismissed as without merit.

IV.

Also before the court is McGrath's motion for summary judgment.  McGrath's motion incorporates the record already before the court and presents no new facts or arguments for the court's consideration.  McGrath requests a hearing for proper adjudication of his motion.

McGrath justifies his motion as an attempt to "streamline" the case.  Motion at 1. As McGrath's motion adds nothing to the briefing already before the court, and as the court has already determined that a hearing is not necessary for resolution of the claims before it, adjudication of the merits of McGrath's petition on the basis of the record will necessarily determine the merits of McGrath's motion for summary judgment.

As described above, McGrath's claims should be dismissed as beyond this court's subject matter jurisdiction, as procedurally defaulted, or as being without merit. Consequently, his petition must be dismissed.  For these reasons, McGrath's motion for summary judgment should be denied.

V.

For the reasons given above, McGrath's motion for summary judgment should be **DENIED**.  In addition, (1) McGrath's second, ninth, and thirteenth grounds for relief should be dismissed as beyond this court's subject matter jurisdiction; (2) McGrath's first, third, fourth, fifth, sixth, seventh, eighth, tenth, twelfth, and fourteenth grounds for relief should be dismissed as procedurally defaulted; and (3) McGrath's eleventh ground for relief should be dismissed as without merit.  Thus, McGrath's petition for habeas

40

corpus should be dismissed with prejudice.


Date:  November 1, 2012                              /s/ Nancy A. Vecchiarelli
                                                     United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111.*